## PEOPLE v. WILLIAMS *et al.*

*Taxes — duty of county treasurers to pay over to State treasury.*

The act of a county treasurer in withholding from the State treasury the amount received by him for a State tax cannot be justified on the ground that the statute imposing such tax was void because it violated section 13 of article 7 of the constitution, and has been decided to be so by the court of appeals; and that he is under an obligation to refund the moneys to the tax payers respectively.

Accordingly, where the legislature in 1872 passed an act for the levying of a tax, which act was, on the 6th of May, 1873, decided by the court of appeals to be unconstitutional, on the ground that it did not specify or state either the amount or the object of the tax; *Held,* (1) That the object of the constitutional provision being the protection of the tax payers, and the objection to the statute being one of form merely, the tax payers might waive it; and a payment of the tax without coercion was conclusive evidence of such waiver.　(2) That the right to object to the invalidity of the statute was confined to the tax payers; and a county treasurer could not raise the objection.　(3) That it was competent for the legislature to cure the defect in the statute at any time before the parties entitled to avail themselves of the defect had done so; and that it had cured the defect (Laws of 1873, chap. 643, § 3) by which all acts done under the law of 1872 were made valid.

SUBMISSION of a controversy without action, as provided by section 372 of the Code of Procedure.

The defendant, George N. Williams, is the county treasurer of Ontario county. The other defendants are the sureties on his official bond, whereby he became bound to pay over to the State treasurer all moneys received by him belonging to the State.

The board of supervisors of said county, in pursuance of the act of 1872 (Laws of 1872, chap. 734), caused to .be levied and collected a tax of three and one-half mills per dollar, which was paid by the collectors to the defendant Williams, as such treasurer, and amounted to $67,252.53.

After such payment, and before the passage of the act of 1873, the court of appeals decided that the act of 1872, under which the tax was levied, was unconstitutional and void. A portion of the tax payers, learning of this decision, demanded of said treasurer a return of their money, and forbade his paying the same to the State treasurer.

After such demand and notice, and on the 29th of May, 1873, the legislature passed an act (Laws 1873, chap. 643), and on the 13th of June, in the same year, another act (Laws 1873, chap. 760), legalizing all acts done under the act of 1872.

On the 14th of June, 1873, the comptroller gave notice of said acts, and that he should expect the payment of said sum to the State treasurer, in accordance with the same. The defendant Williams declined to pay the same, on the ground that the law under which it was collected had been decided unconstitutional and void by the court of appeals, and that the acts of 1873 were therefore inoperative; and, also, for the reason that certain of the tax payers had forbidden his paying over the same. The defendant Williams makes no claim to the moneys, and is willing to pay the same to whoever is adjudged legally entitled to the same.

The questions submitted are, whether it is the duty of the defendant Williams to pay the same to the State treasurer, and, if so, whether he is chargeable with interest thereon.

*Marcus T. Hun*, for the people, cited *Hirschfeldt* v. *Fanton*, Anth. N. P. 361; *Supervisors of Rensselaer* v. *Bates*, 17 N. Y. 242; *Greenway* v. *Hurd*, 4 T. R. 553; *Berry* v. *Mayhew*, 1 Daly, 54; *Tennant* v. *Elliott*, 1 B. & P. 3; *Farmer* v. *Russell*, id. 296; *Merritt* v. *Millard*, 4 Keyes, 208; *Elliott* v. *Swartwout*, 10 Pet. 137;

*Holland* v. *Russell*, 30 L. J. Q. B. 308; *Whitebread* v. *Brookbank*, Cowp. 69; *Irving* v. *Wilson*, 4 T. R. 485; *Bend* v. *Hoyt.*, 13 id. 263; *State Tonnage Tax Case*, 12 Wall. 204; *Farmer* v. *Arundel*, 2 Black, 825; *Marriott* v. *Hampton*, 2 Esp. 546; *Bilbie* v. *Lumley*, 2 East, 469; *Stevens* v. *Lynch*, 12 id. 38; *Brown* v. *McKenally*, 1 Esp. 279; *Knibbs* v. *Hall*, id. 84; *Sprague* v. *Birdsall*, 2 Cow. 419; *Clark* v. *Dutcher*, 9 id. 674; *Fleetwood* v. *City of New York*, 2 Sandf. 475; *Rector of Trinity Church* v. *Mayor of N. Y.*, 10 How. 138; *Sandford* v. *Mayor of New York*, 33 Barb. 147; *Forrest* v. *Mayor of New York*, 13 Abb. 350; *Union Bank* v. *Mayor of New York*, 51 Barb. 159; *Lott* v. *Swezey*, 29 id. 93; *Wyman* v. *Farnsworth*, 3 id. 369; *Parish* v. *Golden*, 35 N. Y. 462; *Buffalo & State Line R. R. Co.* v. *Supervisors of Erie*, 48 id. 99; *Swift* v. *City of Poughkeepsie*, 37 id. 511; *Bank of the Commonwealth* v. *Mayor of New York*, 43 id. 184.

*E. G. Lapham*, for defendant. The act of 1872 having been declared unconstitutional and void, the persons, from whom the tax under it was collected, may recover the money from the defendant, or any other person into whose hands it may come. Void laws are as no laws, and without legislation the fund illegally collected under that law could not be used or applied to any public use or purpose. *National Bank of Chemung* v. *City of Elmira*, 8 Alb. Law Jour. 410. This is conceded by the legislation attempted after the decision of the court of appeals as to the validity of the act of 1872. Sections 2 and 3 of chapter 643, and section 2 of chapter 760 of the Laws of 1873, which attempt to legalize the action of all officers in levying, imposing and collecting taxes under the act of 1872, and to make such acts valid, as though the act of 1872 had been a constitutional act, etc., and provide that, in cases where moneys have been collected and paid to the county treasurer under the latter act, the county treasurer shall pay them over to the State treasurer, are invalid. After the court of last resort has declared an act unconstitutional and void, a subsequent legislature cannot legalize acts done under it. *People ex rel. Hopkins* v. *Supervisors of Kings*, 52 N. Y. 556. The defendant is not liable for interest.

GILBERT, J. The act of the defendant, in withholding from the State treasury the amount received by him for the State tax of 1872, is sought to be justified on the ground that the statute imposing such tax was unconstitutional and void, and that he is under an

obligation to refund the same to the tax payers, respectively. The argument rests on the proposition that void taxes are no taxes, and if paid, may be recovered back from the person who received the same. The statute, pursuant to which the taxes in question were collected, is as follows: "There shall be imposed, levied and collected for the fiscal year commencing on the 1st day of October, 1872, a tax of three and one-half mills per dollar upon the assessed value of the real and personal property in the State of New York, *or so much thereof as may be necessary to provide for the payment of the canal and general fund deficiences, directed to be paid by the act chapter 700 of the Laws of 1872*, which tax shall be levied, collected and paid into the State treasury, in the same manner that all other State taxes are required to be levied, collected and paid." Laws 1872, ch. 734, § 1.

This act was held to be unconstitutional, solely upon the ground that it violated section 13 of article 7 of the constitution, in that it did not specify or state either the amount or object of the tax, as required by that section. *People ex rel. Hopkins* v. *Supervisors of Kings*, 52 N. Y. 556. The court held that the qualifying effect of the words italicized made the statute abortive. It does not appear that the point was raised before the court by counsel on either side. Still, the decision is none the less binding. It will be observed, however, that the objection to the statute is one of form merely, and does not touch the power of the legislature to impose the tax. It will be observed, further, that the manifest object of the constitutional provision, which was held to have been violated, was the protection of the tax payers. The court so held, distinctly. They said, page 566: "The constitution prescribing the requisites of a law imposing a tax is in harmony with the other provisions designed for the protection of the tax payers." Such being the object of the constitutional provision, and the nature of the objection to the statute, we think the tax payers might waive it, and that a payment of the tax without coercion is conclusive evidence of such waiver. Sedgw. Const. Law, 111; *Sinclair* v. *Jackson*, 8 Cow. 543; *People* v. *Murray*, 5 Hill, 468; *Baker* v. *Braman*, 6 id. 47; *Van Hook* v. *Whitlock*, 26 Wend. 43; *Embury* v. *Connor*, 3 N. Y. 511, 518; *Sherman* v. *McKeon*, 38 N. Y. 266, 274; Cooley's Const. Lim. 181, 182. The case in 52 N. Y. was an application for a mandamus to compel the supervisors to levy the illegal tax, and of course there could be no waiver of the objection stated, as no opportu-

nity was afforded for that purpose. But in any point of view, the right to object to the invalidity of the statute must be confined to the tax payers alone, and it does not lie in the mouth of the defendant to raise it. See cases, *supra*.

We are also of opinion that the objection, being one of form merely, and not of substance, it was competent for the legislature to cure the defect at any time before the parties entitled to avail themselves of such defect had effectually done so. By chapter 643, section 3, Laws of 1873, it is provided that " the action of all boards of supervisors, assessors and collectors of taxes, and all officers of this State, in imposing, levying and collecting taxes, in obedience to what purported to be chapter 734 of the Laws of 1872, and in paying over moneys raised thereby, is hereby ratified, confirmed, legalized and made valid, the same as if the said chapter had been and was a constitutional and valid act of the legislature."

It cannot be doubted that the legislature might, at any time before the actual collection of the tax, have so amended the defective statute as to bring it into conformity with the constitutional requirement. They might have done so at the same session, or at an extra session. Nor would they, by such an amendment, exercise any powers in conflict with the constitution, for there is no question of their power to impose the tax by means of a law passed conformably thereto. It would be necessary, of course, that an amendatory or curative statute should state the tax and the object to which it is to be applied, in order to conform to the constitution. This is done by section 2 of the act of 1873. The tax authorized to be collected under the act of 1872 was three and one-half mills on the dollar. By section 2 of the act of 1873, the same tax is stated, one and one-quarter mills of which is to be paid into the canal fund, and two and one-quarter mills of which is to be paid into the general fund. Then by section 3 it is further provided that payments on account of the tax imposed by the act of 1872 shall be legal, and shall be held and taken as a satisfaction thereof when paid into ·the State treasury. This is a round-about method of accomplishing a very simple object. But the intent is plain enough. It was to render valid the act of 1872 so far as it had been practically effective, and so far as it had not, to secure the objects of the tax thereby imposed by a collection thereof in 1873.

It is difficult to perceive, therefore, why the legislature may not pass such a statute where it does not interfere with vested rights.

The case does not show any such inference. The taxes collected had been paid over to the defendant before the 1st of April, 1873; the decision of the court of appeals invalidating the tax was made May 6, 1873, and the act legalizing the collection of it was passed May 29, 1873. It is not probable, therefore, that any vested rights had accrued before the act took effect. The most that can be said is, that under the act of 1872 there was a lack of power conferred by the legislature on subordinate officials. But there was no such lack of power in the legislature itself to confer the requisite authority upon them. In such a case we perceive no legal objection to the legislature ratifying and confirming what was done under its authority. *Thompson* v. *Lee County*, 3 Wall. 327; *People ex rel. Albany & Sus. R. R. Co.* v. *Mitchell*, 35 N. Y. 551; S. C., 45 Barb. 208. It is said that inequality and injustice will thereby be produced. One answer to this is, that the fact stated does not appear in the case; another is, that inequality and injustice do not vitiate taxation.

It is not stated in the case that the State tax in question was levied, collected and paid to the defendant along with the annual county taxes, pursuant to the general statutes relative to the assessment and collection of taxes; but we are bound to take judicial notice of that fact. It may be that the principle adopted by the court of appeals, in the cases of *Newman* v. *Supervisors of Livingston*, 45 N. Y. 676, and *National Bank of Chemung* v. *City of Elmira*, 53 N. Y. 49, may justify a recovery back of a portion of an entire tax, on the ground that such portion was illegally included in the warrant for the collection of the tax, and the amount thereof can be ascertained by computation. The general rule, however, is that to warrant such a recovery the authority to levy the tax collected must be wholly wanting, or the tax itself wholly unauthorized. Dillon on Mun. Corp., § 751. And public policy would seem to require such a rule; for, without it, tax payers would be relieved from the duty of making seasonable objections before the assessors, when they are making up their assessment rolls, and of taking the appropriate proceedings which the law has provided for the correction of the errors of boards of supervisors. The certain effect would be to accumulate in the courts an inordinate amount of unnecessary litigation. Assuming, however, that the tax payers are entitled to recover back the portion of the tax belonging to the State in an action for money had and received, brought against the

county according to the principle of the cases in the court of appeals last cited, there remains the question whether an action can be maintained against the defendant in any form. The case states, that after the State tax was paid over to him, a number of the tax payers (what number is not stated), who had paid their proportions of said tax, demanded the same of him, and forbade his paying over the same to the State treasurer. We are very clear that these facts give no cause of action whatever against the defendant; nor do any or all of the facts stated in the case. He has not been guilty of a trespass, or of a conversion, because it was his official duty to receive the money and to keep it until he shold pay it over according to law. *Badkin* v. *Powell*, Cowp. 476; *Sager* v. *Blane*, 44 N. Y. 445. In *Badkin* v. *Powell*, Lord MANSFIELD observed: "It would be terrible if a pound-keeper were liable to an action for refusing to take cattle in, and were also liable to another action for not letting them go;" and so we say of a county treasurer in respect to his duty. Assumpsit will not lie against him, for in contemplation of law he received the money in the capacity of agent, either of the State or of the county, and could not pay it back without the authority of his principal. He cannot be treated as the agent of the county in respect to State taxes, unless a county becomes liable to the State for the amount of the State tax at the time of the imposition thereof. This question was suggested, but not decided, in *Bank of the Commonwealth* v. *Mayor of New York*, 43 N. Y. 184. We have not been referred to any statute or rule of law creating the relation of creditor and debtor between the State and a county in its corporate capacity. The State collects and receives taxes for State purposes through the operation of general laws acting directly upon the tax payers. We think, therefore, that a payment by the defendant to the tax payers, pursuant to the direction of the board of supervisors, would not shield him from liability on his official bond. The law makes it the duty of the defendant to pay the moneys in controversy to the treasurer of the State. 1 R. S. 369, § 20; Laws of 1855, chap. 427, §§ 2, 11, 12, 13; Laws of 1873, chap. 760. He cannot be permitted to evade the performance of that duty on the ground that the tax payers, or any other persons, have forbidden the performance of it. Every public officer is bound faithfully to fulfill all the duties imposed upon him by law, and to bear the consequences incident thereto, trusting for indemnity to the master whose servant he is. The defendant owes no duty, nor is he under any liability to

the tax payers. Where public officers have been held liable to refund moneys illegally exacted, it has been upon the ground that the act of the officer himself in receiving the money was illegal. Here it was the defendant's imperative duty to receive the money, and it would have been a clear violation of law for him to refuse to receive it. Such cases, therefore, can have no proper application to this case. To allow a county treasurer to retain public moneys upon any such grounds as are presented here would sanction a positive violation of statutes of unquestioned validity, and would lead to intolerable abuses in the administration of public affairs.

There must be judgment for the plaintiff for $67,252.53, with interest from April 1, 1873.

*Judgment for the plaintiff.*